*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN BLACKWELL,

        Plaintiff-Appellant,

v

DEAN FRANCHI and DEBRA FRANCHI,

        Defendants-Appellees.

FOR PUBLICATION
March 14, 2019
9:10 a.m.

No. 328929
Oakland Circuit Court
LC No. 14-141562-NI

ON REMAND

Before: K. F. KELLY, P.J., and GLEICHER and SHAPIRO, JJ.

SHAPIRO, J.

This case returns to us on remand from the Supreme Court. The Court denied defendants' request to review our holding reversing the trial court's conclusion that the open and obvious doctrine barred plaintiff's claim. The Court, however, remanded the case to us

> for consideration of this issue it has not yet addressed: whether defendants owed plaintiff a duty to warn about the step because the plaintiff did not know or have reason to know of the condition and the risk involved, and it involved an unreasonable risk of harm, and the defendants should not have expected that a licensee like the plaintiff would discover or realize the danger . . . . [*Blackwell v Franchi*, 502 Mich 918 (2018) (quotation marks and citations omitted).]

Our prior opinion set forth the background to this case. *Blackwell v Franchi*, 318 Mich App 373; 899 NW2d 415 (2017). The condition alleged by plaintiff is a nonvisible[1] eight-inch

---

[1] Defendant does not concede that the drop-off was not visible; this presents a question of fact for the jury. But for purposes of this appeal we view the evidence in a light most favorable to

-1-

floor level drop-off as one walks from the hallway in defendants' home into the darkened mud room of that home. Plaintiff alleges that the nonvisible change in floor level caused her to fall as she attempted to enter the mud room and that she suffered injury as a result. We conclude that defendants had a general duty to plaintiff as a licensee and that whether defendants violated that duty by their specific actions or omissions is a question for the factfinder.

The general duty owed by premises owners to licensees is well settled and, as the Supreme Court's order observes, properly articulated in the Restatement (Second) of Torts as follows:

> A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> (c) the licensees do not know or have reason to know of the condition and the risk involved. [*Blackwell*, 502 Mich 918 (quotation marks and citations omitted).]

The Supreme Court has previously provided guidance on how to analyze whether a particular action or omission violates a general standard of care or general duty. In *Case v Consumers Power Co*, 463 Mich 1, 7; 615 NW2d 17 (2000), the Court explained that whether an alleged tortfeasor's action violated that general standard of care is in essence a determination of the specific duty under the facts of the given case. In other words, when determining whether a defendant violated the general standard of care, the jury must determine what a defendant need do (or not do) to meet that general standard under the specific facts before them:

> Ordinarily, it is for the jury to determine whether a defendant's conduct fell below the general standard of care. *Stated another way, the jury usually decides the specific standard of care that should have been exercised by a defendant in a given case.* [*Id*. (emphasis added).]

*Case* went on to quote the United States Supreme Court's caution to courts that in performing their responsibility to define general duties, they should not define what a defendant's specific duty was given the facts and circumstances of a particular case. That determination is left to the factfinder:

> There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be

---

plaintiff, the nonmoving party. *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). And deposition testimony supports plaintiff's position that the drop-off was nonvisible.

considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms "ordinary care," "reasonable prudence," and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. *The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs.* [*Id*. at 10, quoting *Grand Truck R Co v Ives*, 144 US 408, 417; 12 S Ct 679; 36 L Ed 485 (1892) (emphasis added).]

Having said that, *Case* also acknowledged an exception to this principle: "[T]he court sometimes decides the specific standard of care if it is of the opinion 'that all reasonable persons would agree or there is an overriding legislatively or judicially declared public policy . . . .' " *Id*. at 7, quoting *Moning v Alfono*, 400 Mich 425, 438; 254 NW2d 759 (1977) (emphasis removed).

We find no overriding legislative public policy that would require a court to determine the specific standard of care applicable in this case. None has been cited to us and our own research has not revealed any. And in considering whether there is an overriding judicially declared public policy, we are mindful of the Supreme Court's admonition that a determination of public policy "must be more than a different nomenclature for describing the personal preferences of individual judges." *Terrien v Zwit,* 467 Mich 56, 66; 648 NW2d 602 (2002). Undoubtedly, in any given case, some jurists might prefer that the specific standard of care be narrower or broader than that which a jury might determine. However, those personal preferences cannot be said to constitute public policy grounds to remove the jury's power and responsibility to determine the specific standard of care. It is the trial court's role to give proper instructions concerning the general standard of care, but it is the jury's role to determine just what that general standard requires of a party under the specific facts and circumstances in a particular case. *Case*, 463 Mich at 7; *Moning*, 400 Mich at 438.

Given the lack of overriding policy concerns, we must next consider whether "all reasonable persons would agree" that the specific standard of care applicable under the facts of this case did not require defendants to warn plaintiff of the floor level change.[2] *Case*, 463 Mich

---

[2] As the *Case* Court recognized,

Clearly, "reasonable care under the circumstances" represents a sliding scale. The more severe the potential injury, the more resources a reasonable person will expend to try and prevent that injury. Similarly, the greater the likelihood that a

at 7. We conclude that the answer to this question is "no" because a reasonable person could conclude that the specific standard of care in this case included giving a warning to plaintiff and other licensees that upon entering the mud room they would encounter an eight-inch drop-off that was not visible.[3] Put in the terms of the remand order, reasonable persons could disagree on whether the alleged condition, i.e., the nonvisible change in floor level, presented an unreasonable risk of harm, whether plaintiff knew or had reason to know of the condition and the

> severe injury will result, the greater the lengths a reasonable person will go to prevent it. This principle is widely recognized.[11]
>
> _____
>
> [11] See *Dembicer v Pawtucket Cabinet & Builders Finish Co*, 58 RI 451, 455; 193 A 622 (1937) ("The greater the appreciable danger, the greater the degree of care necessary to constitute due or ordinary care"); *Wyrulec Co v Schutt*, 866 P2d 756, 762 (Wyo, 1993) ("[W]hat constitutes ordinary care increases as the danger increases. The concept of ordinary care accommodates all circumstances so that the degree of care varies with the circumstances."); *Webb v Wisconsin Southern Gas Co*, 27 Wis 2d 343, 350; 134 NW2d 407 (1965) ("The degree of effort, caution, or diligence required of a person to reach or attain the standard of ordinary care necessarily varies with the degree of hazard inherent under the circumstances"). [*Case*, 463 Mich at 9 & n 11.]

[3] This fundamental principle dates back to the earliest days of Michigan jurisprudence. As stated in *Detroit & Milwaukee Railroad Co v Van Steinburg*, 17 Mich 99, 121 (1868), "[When] there is *any* uncertainty [as to negligence], it remains a matter of fact for the consideration of the jury[.]" (Emphasis added). Even when the facts are not in dispute, it is for the jury, not the court, to determine the specific standard of care and whether it was breached.

> It is a mistake . . . to say . . . that when the facts are undisputed the question of negligence is necessarily one of law. . . . The fact of negligence is very seldom established by such direct and positive evidence that it can be taken from the consideration of the jury and pronounced upon as matter of law. On the contrary, it is almost always to be deduced as an inference of fact, from several facts and circumstances disclosed by the testimony, after their connection and relation to the matter in issue have been traced, and their force and weight considered. In such case the inference cannot be made without the intervention of a jury, although all the witnesses agree in their statements, or there be but one statement which is consistent throughout. Presumptions of fact, from their very nature, are not strictly objects of legal science, like presumptions of law. [*Id.* at 122-123 (quotation marks and citation omitted).]

-4-

risk involved, and whether defendants should have expected that plaintiff would not have discovered the hazard before falling victim to it.

Accordingly, we again reverse the grant of summary disposition and remand to the circuit court for trial. Plaintiff may tax her costs as the prevailing party. MCR 7.219(A). We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher